No. 2-17-0196
Opinion filed June 17, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 99-CF-2666 |
| ERICK D. CONWAY, | ) ) | Honorable Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices Hutchinson and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Erick D. Conway, appeals from the denial of leave to file a second petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). Defendant argues that the State improperly participated in the trial court's determination whether to grant leave and that the case must therefore be remanded for a new determination. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Following a jury trial in the circuit court of Winnebago County, defendant was found guilty of armed robbery (720 ILCS 5/18-2(a) (West 1998)) and was sentenced to life imprisonment as a habitual criminal (*id.* § 33B-1). Defendant had originally been charged with escape as well, but the two charges were severed. We affirmed defendant's armed robbery

conviction on direct appeal. *People v. Conway*, No. 2-01-0924 (2003) (unpublished order under Illinois Supreme Court Rule 23). Defendant filed a petition under the Act, in which he contended that he received ineffective assistance of counsel in his direct appeal because appellate counsel failed to argue that defendant was not brought to trial within 120 days, as required by section 103-5(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(a) (West 1998)). After some procedural missteps, defendant was given the opportunity to file an amended petition with the reasonable assistance of counsel. The trial court granted the State's motion to dismiss the amended petition. We affirmed the dismissal. *People v. Conway*, No. 2-09-0193 (2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 4 On October 18, 2016, defendant moved for leave to file a successive postconviction petition. In his motion, defendant argued that there was cause under section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2016)) for his failure to bring the successive petition's claims in his initial postconviction petition. Specifically, defendant argued that cause existed because, during the initial postconviction proceedings, he was unfit due to mental illness. In the successive petition itself, defendant alleged that, while in the Department of Corrections, he had been diagnosed with severe anxiety and mild schizophrenia.

¶ 5 On October 21, 2016, Assistant State's Attorney Steven Biagi appeared in court to voice the State's opposition to defendant's motion. Defendant was not present. Biagi noted that, in defendant's initial postconviction petition, he claimed that he was deprived of his right to a speedy trial. Biagi stated that continuances granted to defendant's trial counsel were attributable to defendant because defendant did not specifically seek to "fire" trial counsel. Biagi noted that this court affirmed the dismissal of the original petition. Biagi argued that defendant was "raising the very same issue" that he raised in the initial petition, but was "couching it in terms of

how he believes he was unfit during his post-conviction proceedings." Biagi argued that defendant's alleged mental illness did not render him unfit. Biagi contended that defendant was "just rehashing what he's already raised and that which was rejected" and that defendant had not shown cause or prejudice. See *id.* The trial court denied defendant's motion for leave, stating as follows:

"As far as the issues raised, they have been raised previously and previously litigated ***.

He makes a conclusory statement that he has been diagnosed with an anxiety disorder, among other things, *** and, therefore, he also makes a conclusory statement that somehow that rendered him unfit for trial. Of course, that's a non sequitur. Because even if he has been diagnosed with an anxiety disorder in the Department of Corrections, it certainly bears no logical or legal relationship to his mental status at the time of trial or during the time of his previously filed post-conviction petitions.

Furthermore, there is not an equivalency between a mental disorder or mental illness and unfitness. They are separate determinations. And there is no showing that he was, in fact, unfit during the time of his previous pleas or that he is currently unfit or that any of his prior filings were or are actions in any way impaired.

This is essentially just an end run around the prohibition against successive post-conviction filings."

¶ 6    After the trial court announced its ruling, Biagi asked whether the court recalled defendant's conduct during the proceedings on defendant's initial postconviction petition. The trial court responded that defendant "did not aver or allude to any difficulty with understanding the proceedings or comprehending what was going on." The court added that, at the time, it "had

no reservations whatsoever about [defendant's] lucidity, fitness and so forth." The court entered a written order denying the motion for essentially the same reasons. Defendant unsuccessfully moved to reconsider, and this appeal followed.

¶ 7                                    II. ANALYSIS

¶ 8     The Act creates a procedure by which a criminal defendant may file a petition challenging his conviction or sentence based on a substantial violation of constitutional rights. *People v. Lewis*, 2017 IL App (1st) 150070, ¶ 13. The Act permits a defendant to file only one petition without leave of court, which, as pertinent here, may be granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2016). Cause and prejudice are defined as follows:

> "(1) [A] prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 9     In *People v. Bailey*, 2017 IL 121450, ¶ 24, our supreme court held that the State "should not be permitted to participate at the cause and prejudice stage of successive postconviction proceedings." The court reasoned that, for purposes of deciding whether a defendant should be granted leave to file a successive petition, the cause-and-prejudice test presents a question of law "to be decided on the pleadings and supporting documentation submitted to the court by the defendant-petitioner and that no provision is made in the statute for an evidentiary hearing on the issue of cause and prejudice." *Id.* The court stressed that the inquiry "is a preliminary screening

to determine whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice." *Id.* Because the trial court is capable of making an independent determination of the adequacy of the allegations, the *Bailey* court saw "no reason for the State to be involved at the cause and prejudice stage." *Id.* ¶ 25.

¶ 10 Defendant contends that the State's input at the preliminary-screening stage in this case was impermissible. The State responds that its input was minimal and that a remand is therefore unnecessary. The State advised the trial court that defendant's successive petition was just "a rehashing of what [defendant had] already raised and that which was rejected." In denying leave to file a successive petition, the trial court similarly found that the issues raised in the successive petition had previously been litigated. The State inquired whether the court recalled defendant's deportment during the proceedings on his first postconviction petition. The court noted that it had seen no indication that defendant was unfit. According to the State, its input was minimal because the court was familiar with the prior proceedings and the State did not convey any "new or particularly adversarial information" to the court. According to the State, the court "did not specifically rely on the State's input or need to rely on its input to deny defendant's motion for leave."

¶ 11 The State's arguments are meritless. We note that there is no precedential case law holding that input into the preliminary cause-and-prejudice inquiry is permissible if it is *de minimis*. Arguments unaccompanied by a citation of pertinent authority are forfeited. *Watson v. West Suburban Medical Center*, 2018 IL App (1st) 162707, ¶ 214. In any event, the State's participation here was not minimal. The trial court's rationale for denying defendant's motion closely paralleled the State's argument. That the trial court was familiar with the prior proceedings did not dilute the State's input.

¶ 12    The State's participation at the cause-and-prejudice stage was improper, and we do not condone it.  The question remains, however, as to what relief, if any, is appropriate.  See *Bailey*, 2017 IL 121450, ¶ 41.  In *Bailey*, despite the State's improper input at the cause-and-prejudice stage, our supreme court declined to remand the case to the trial court.  Instead, citing the interests of judicial economy, the court undertook its own examination of cause and prejudice.  Concluding, as a matter of law, that the defendant had failed to show cause and prejudice, the court affirmed the denial of leave to file a successive petition.  *Id.* ¶ 49.  However, in *People v. Munson*, 2018 IL App (3d) 150544, cited by defendant, the Third District held that the appellate court may not conduct its own examination of cause and prejudice and must instead remand to the trial court when the State has had improper input at the cause-and-prejudice stage.  The *Munson* court reasoned as follows:

> "Unlike the supreme court, we do not have broad supervisory authority. [Citation.]  Instead, we are authorized to '(1) reverse, affirm, or modify the judgment or order from which the appeal is taken; (2) set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken; (3) reduce the degree of the offense of which the appellant was convicted; (4) reduce the punishment imposed by the trial court; or (5) order a new trial.' Ill. S. Ct. R. 615(b).  Notably, Illinois Supreme Court Rule 615 does not provide the appellate court with the power to conduct a *de novo* hearing on defendant's motion for leave to file a successive postconviction petition.  This is consistent with the Act, which expressly contemplates the filing of the petition in the 'trial court.'  [Citation.]  Therefore, we do not have the power under Rule 615 or the Act to conduct a *de novo* review of defendant's motion for leave." *Id.* ¶ 10.

¶ 13    In *People v. Baller*, 2018 IL App (3d) 160165 (in which each member of the panel wrote an opinion), the Third District adhered to its holding in *Munson*.  Justice Schmidt dissented, reasoning as follows:

"The *Munson* court's train jumped the tracks in paragraph 10.  [Citation.]  It simply asserted that to review the record to evaluate whether the trial court's error prejudiced defendant involved an exercise of supervisory authority.  It never discussed why that is so.  The *Munson* court noted, 'Notably, Illinois Supreme Court Rule 615 does not provide the appellate court with the power to conduct a *de novo* hearing on defendant's motion for leave to file a successive postconviction petition.' [Citation.] There is nothing novel or unique about affirming the trial court in this case without remand, notwithstanding the trial court's error below.  We do it all the time.  Again, this has nothing to do with supervisory authority but, rather, with our license to affirm for any reason apparent in the record.  I need not cite any case authority for the notion that '*de novo*' is an oft-used standard of review in the appellate court.  In plain English, the trial court reviewed and denied defendant's motion for leave to file his successive postconviction petition.  The trial court erred in allowing the State to participate in that decision.  Notwithstanding the error, the ultimate judgment of the trial court was correct. We should affirm.  We do this thousands of times a year in cases not involving successive postconviction petitions.  There is nothing about a successive postconviction petition that would take it out of the realm of garden-variety appellate review.  That portion of the *Munson* court's ruling, holding that affirming without remand involves

exercise of supervisory authority, appears to be an anomaly in Illinois jurisprudence. As in *Bailey*, the error below was harmless." *Id.* ¶ 29 (Schmidt, J., dissenting).[1]

¶ 14    In response to Justice Schmidt's dissent, the author of the lead opinion (Justice Wright) wrote that "unlike [the appellate court], the supreme court has been vested with broad supervisory authority by the Illinois Constitution." *Id.* ¶ 12 (lead opinion). Justice Wright further reasoned:

> "[T]he procedural posture of the instant case creates an exception to the general principle that an appellate court may affirm on any basis found in the record. The supreme court has expressly held that the Act is entirely a creature of statute and all rights derive only from the statute. [Citation.] Further, the supreme court has expressly held that review of a motion for leave to file a successive postconviction petition must be conducted in a venue free from State participation. [Citation.] The only way to honor these holdings is to reset the scales of justice and remand the matter to the trial court for an independent evaluation of defendant's motion by expressly ignoring the State's input as expressed both in this court and the trial court." *Id.* ¶ 16.

¶ 15    We find that *Munson* and *Baller* are unpersuasive. We disagree with the assertion that the *Bailey* court's review of the denial of the defendant's motion for leave was an exercise of its supervisory authority. The *Bailey* court never suggested that it was exercising its supervisory authority when it considered whether the defendant was entitled to file a successive petition. Rather, the *Bailey* court's decision to consider that question, notwithstanding the error in the

---

[1] The parties here did not originally contest the applicability of *Munson*. However, we ordered supplemental briefing on the issue of whether, in light of the dissent in *Baller*, we should follow *Munson*.

proceedings below, was rooted in considerations of judicial economy. Those considerations apply with equal force in appeals to this court.

¶ 16 Defendant contends that our supreme court is not required to announce when it is exercising its supervisory authority. However, we certainly would expect the *Bailey* court to have alerted us to such an important limitation on its decision. Moreover, the assumption in *Munson* and *Baller* that the *Bailey* court exercised its supervisory authority is inconsistent with our supreme court's standards for exercising its supervisory authority. Our supreme court has noted:

> "While our supervisory authority may be expansive, it is invoked with restraint.
> *** We exercise our supervisory authority only under exceptional circumstances.
> [Citation.] More specifically, we have held that supervisory orders will be used ' "only if
> the normal appellate process will not afford adequate relief and the dispute involves a
> matter important to the administration of justice, or where intervention is necessary to
> keep an inferior court or tribunal from acting beyond the scope of its authority." '
> [Citation.]" *Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶ 17.

¶ 17 According to *Munson* and *Baller*, the appropriate remedy when the State has input into the decision whether to grant leave to file a successive petition is to remand to the trial court for an independent determination of that question. Yet if that is the case, it is a mystery why the *Bailey* court chose not to do so. There was nothing exceptional about that case requiring the *Bailey* court to make its own determination whether the defendant was entitled to leave to file a successive petition. If, as the *Munson* and *Baller* courts held, the normal appellate process requires a remand to the trial court, we can see no reason why that would not have afforded adequate relief to the defendant in *Bailey*. Nor does it appear that intervention was necessary in

*Bailey* to prevent a lower court from exceeding its authority. Thus, defendant would have us believe that the *Bailey* court exercised its supervisory authority both without saying so and under circumstances where there was no apparent reason for doing so.

¶ 18    Rather than looking to *Bailey* to determine the proper remedy when the State participates in the determination whether to grant leave to file, the *Munson* and *Baller* courts interpreted *Bailey* to conform to their own views of the appropriate remedy. Our concern, however, is what *Bailey* actually says about the proper remedy, not what the *Munson* and *Baller* courts believed the *Bailey* court *should* have said about the subject. In any event, the *Munson* and *Baller* courts' reasons for remanding to the trial court are unpersuasive.

¶ 19    The *Munson* court reasoned that "Illinois Supreme Court Rule 615 does not provide the appellate court with the power to conduct a *de novo* hearing on defendant's motion for leave to file a successive postconviction petition." *Munson*, 2018 IL App (3d) 150544, ¶ 10. Whether this court has that power is beside the point. Determining whether a defendant established cause and prejudice is a legal question that may be resolved without conducting a hearing. That is what the *Bailey* court did, without giving any hint that it was acting outside the scope of the powers conferred by Rule 615(b). That rule enumerates the permissible types of dispositions of appeals; it does not specify or limit the grounds for choosing the appropriate disposition. The State simply asks us to affirm the trial court's judgment, and Rule 615(b) plainly permits us to do so.

¶ 20    The *Baller* court observed that "the Act is entirely a creature of statute and all rights derive only from the statute." *Baller*, 2018 IL App (3d) 160165, ¶ 16. That is true, but we fail to see how appellate review of the determination of cause and prejudice creates any new right. Defendant might have a statutory right to an initial screening free from the State's input, but it

does not follow that a violation of that right necessarily requires reversal. Violations of procedural rights conferred by statute in criminal prosecutions can be subject to a harmless-error analysis. For example, section 115-1 of the Code provides that "[a]ll prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury *unless the defendant waives a jury trial in writing*." (Emphasis added.) 725 ILCS 5/115-1 (West 2016). Yet in *People v. Silas*, 278 Ill. App. 3d 400, 403 (1996), we held that "[w]here *** a defendant has made a knowing oral waiver of his right to a jury trial in open court, the absence of a written jury waiver is harmless error and does not require reversal."

¶ 21    Indeed, as a general rule, "automatic reversal is required only when an error is deemed 'structural.' " *People v. Thompson*, 238 Ill. 2d 598, 608 (2010). As our supreme court has observed, "[a]n error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *Id.* at 609. A limited class of errors are structural. *Id.* Those errors include, *inter alia*, "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Id.* The State's participation at the cause-and-prejudice stage of a successive postconviction proceeding is not of the same caliber as those errors.

¶ 22    Concededly, in *People v. Jolly*, 2014 IL 117142, our supreme court adopted a rule of automatic reversal for a nonstructural error: the State's adversarial participation in a preliminary *Krankel* determination. See *People v. Krankel*, 102 Ill. 2d 181 (1984). However, *Jolly* is distinguishable because the State's improper participation in the *Krankel* inquiry impeded the development of a proper record for appellate review. That is not a concern here, because the only parts of the record that matter are the motion for leave to file the petition and the petition

itself. Moreover, we owe no deference to the trial court's decision, and the State's improper input has absolutely no effect on our review.

¶ 23 We note that the Third District reiterated the *Munson*/*Baller* rule in *People v. Partida*, 2018 IL App (3d) 160581. That decision added little to the reasoning of the prior cases. The *Partida* court stated that requiring trial courts to comply with the rule forbidding participation by the State in the determination whether to grant leave "is in the best interest of promoting judicial economy." *Id.* ¶ 11. That reasoning directly contradicts *Bailey*, which indicates that, at least in some cases, considerations of judicial economy militate against remand to the trial court. That said, we do not read *Bailey* to hold that a reviewing court must always undertake its own review of whether a defendant is entitled to file a successive petition. Where the decision to grant or deny leave presents complex issues, a reviewing court may choose to remand to the trial court for a determination that is free from the taint of the State's participation. Here, however, the issues are reasonably straightforward, and we choose to consider whether defendant is entitled to leave to file a successive petition. We turn our attention to that issue now.

¶ 24 In his motion for leave to file the successive petition, defendant contended that, in the initial postconviction proceeding, mental illness caused him to believe that postconviction counsel was attempting to sabotage his case. As a result, defendant discharged postconviction counsel. However, he adopted the amended petition filed by postconviction counsel. According to defendant, the amended petition did not "contain any argument on any of the factual and legal basis [defendant] and [postconviction counsel] consulted about, and agreed [that postconviction counsel] would present to the court," and after discharging counsel, he was unable to adequately present his postconviction claim to the court.

¶ 25    Having reviewed the successive petition, we conclude that defendant has failed to satisfy the cause-and-prejudice test. In the successive petition, defendant claimed that he attempted to discharge trial counsel and that continuances obtained thereafter by trial counsel were not attributable to defendant. We addressed and rejected that argument in defendant's appeal from the dismissal of his initial postconviction petition. *Conway*, No. 2-09-0193, slip order at 11-12. There can be no cause for failing to raise a claim in the initial proceeding when the claim was, in fact, raised in that proceeding.

¶ 26    Defendant also claimed that a continuance requested by counsel from March 29, 2000, to June 5, 2000, "was no longer a continuance *** that was properly attributable to the defense as of May 4, 2000, when the court granted the defense motion to sever [the armed robbery and escape charges]." We see no reason why severing the charges would have had any effect on the computation of the speedy-trial period. Because the claim is meritless, the failure to raise it in the initial proceeding was not prejudicial.

¶ 27    Finally, defendant claimed that the State improperly secured a superseding indictment after he filed a *pro se* motion for dismissal on speedy-trial grounds. Defendant's evident concern is that the State did so to evade the speedy-trial period. We are aware of authority that the State may not nol-pros and then refile charges for the purpose of starting the speedy-trial term anew. See *People v. Weddell*, 405 Ill. App. 3d 424, 437 (2010) (citing *People v. Van Schoyck*, 232 Ill. 2d 330, 340 (2009)). Here, however, defendant was tried within the original speedy-trial period; the State did not attempt to have the speedy-trial period run anew. Again, the claim is meritless, and the failure to raise it in the initial proceeding was not prejudicial.

¶ 28                                    III. CONCLUSION

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.  As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.  55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 30    Affirmed.