2025 IL App (1st) 221599-U

No. 1-22-1599

Order filed June 13, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 10623 |
| | ) | |
| JUAN ALVARADO-GONZAZEZ, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirmed dismissal where the allegations and supporting evidence contained in defendant's fourth and fifth successive postconviction petitions were insufficient to raise a colorable claim of actual innocence and were barred by waiver under section 122-3 of the Post-Conviction Hearing Act (725 ILCS 5/122-3 (West 2020)).

¶ 2    Defendant Juan Alvarado-Gonzalez appeals from the denial of his fourth and fifth successive *pro se* postconviction petitions in which he raised claims of actual innocence. On appeal, defendant contends that the denial of his successive postconviction petitions should be

reversed and remanded with instructions to translate the evidence from Spanish to English and assignment to a new judge because: (1) the trial court refused to consider evidence of defendant's actual innocence because it was in Spanish; and, (2) it was unfair to deny review of the submitted evidence merely because it was in untranslated Spanish. For the following reasons, we affirm.

¶ 3                                BACKGROUND

¶ 4                      A. Defendant's Guilty Plea Proceedings

¶ 5     Defendant entered a negotiated guilty plea to charges of predatory criminal sexual assault of a victim less than 13 years of age and grooming, and was sentenced to an aggregate of 11 years. The circumstances surrounding defendant's arrest and court hearings were fully set out in defendant's direct appeal (*People v. Alvarado-Gonzalez*, 2021 IL App (1st) 181209-U), and will be relayed here only as necessary for resolution of this appeal.

¶ 6     Briefly stated, the record reveals that defendant was arrested on June 19, 2017, in connection with allegations of sexually related crimes involving victims under the age of 13. He was subsequently indicted on July 28, 2017, for multiple charges of predatory criminal sexual assault of a victim under the age of 13, aggravated criminal sexual abuse of a victim under the age of 13, and multiple charges of grooming. Defendant, who was appointed a Spanish interpreter because he did not speak English, initially pleaded not guilty. The State subsequently tendered a plea offer to defendant's privately retained counsel in October 2017, however, on November 28, 2017, defense counsel relayed to the trial court that defendant told him that he wished to represent himself. Ultimately, defendant decided to allow his private counsel to resign and a public defender was appointed to represent him. At the next court date on January 3, 2018, defendant's public defender told the trial court that an agreement was reached with the State.

- 2 -

¶ 7       The State indicated that it would proceed on count one, predatory criminal sexual assault, a Class X felony, and offered nine years on that count; and counts four and five, grooming, for which it offered one year each. APD Ahuja stated that the grooming counts would be served at 50% and the predatory criminal sexual assault count would be served at 85%. The State nol-prossed counts two and three in anticipation of the plea.

¶ 8       The trial court read the charge of predatory criminal sexual assault to defendant, as follows: on or about September 1, 2016, and continuing through November 30, 2016, defendant committed the offense of predatory criminal sexual assault of a child in that he was 17 years of age or older and that he knowingly committed an act of sexual penetration on a 13-year-old child, E.G. When the trial court asked defendant whether he understood the charge against him, defendant replied, in English, "yes." Defendant then pleaded guilty to that charge.

¶ 9       The trial court then informed defendant that the offense was a class X felony and that the sentencing range was 6 to 60 years, with a parole period (Mandatory Supervised Release (MSR)) of three years to life, and that he would have to register as a sex offender for the rest of his life. When the court asked defendant whether he understood all of that, defendant replied, in English, "yes." The trial court also informed defendant that it could fine him up to $25,000 but would not. Defendant and the trial court had an exchange in open court after he informed the court that he did not understand the possible penalties for the charge.

¶ 10     The trial court then read the second charge as follows: on or about September 1, 2016, continuing through November 30, 2016, in Cook County, defendant committed the offense of grooming in that he knowingly used a computer online service, internet service, local bulletin board service or any other device capable of  electronic storage or transmission, specifically a

laptop, to seduce, solicit, lure, entice or attempt to seduce or lure a child by showing child pornography to a child in order to commit any sex offense or otherwise engage in any unlawful sexual conduct which would be sexual penetration with the child or another person believed by defendant to be a child, namely E.G. Defendant ultimately pleaded guilty to that charge also.

¶ 11 Finally, the trial court read the last charge to defendant, which was the same as the second charge, but with a different victim, C.G., to which defendant pleaded guilty after initially stating that he was not pleading guilty to the last two charges. After an exchange with the trial court concerning the charges, defendant pleaded guilty. The trial court then admonished defendant of his right to a jury trial, and other admonishments related to guilty pleas which defendant confirmed that he understood.

¶ 12 The State then presented the following stipulated factual bases for the pleas. The offenses occurred between September 1, 2016, and November 30, 2016, in Chicago, at 2925 North Allen Avenue, apartment number one. The victims were E.G., who was between the ages of 11 and 12, and C.G., who was 10 years old. Defendant, who was 27 years old, was a family friend who had been visiting the victims' home since April 2016. During those dates, defendant brought a black laptop to the victims' home and showed pornography to both E.G., and C.G, and laughed as he showed pornography to C.G. The State continued that if the case proceeded to trial, it would show the nature of the photographic pornographic images that were shown to the victims and that defendant sought to use that pornography to try and seduce each of the victims. Additionally, the State would show that defendant, while alone with E.G., in the kitchen, pulled down the victim's pants and underwear, got on his knees and licked the victim's penis. Defendant was arrested on June 19, 2017, and made admissions after receiving his *Miranda* rights.

¶ 13    The trial court found that defendant's pleas were given knowingly and voluntarily and further accepted the factual bases provided for the pleas.[1] The court subsequently entered findings of guilty and judgment, for predatory criminal sexual assault of a child and two counts of grooming. Prior to sentencing, the trial court admonished defendant about the waiver of a presentence investigation report because of the guilty pleas. The State then presented evidence in aggravation and the trial court further admonished defendant that if he were not a United States citizen that he could be deported based on the guilty plea.  Defendant asked if there was any way that he could receive less time, to which the trial court replied that there was an agreement about the sentence and proceeded to sentence defendant, in accordance with the negotiated plea, to consecutive terms of nine years on count one, one year on count four and one year on count five. Defendant also received 198 days credit, three years to life MSR, and lifetime sex offender registration. The trial court reiterated that count one would be served at 85%, and the other two counts would be served at 50%, and marked the mittimus to reflect that hospital treatment was ordered. The trial court next admonished defendant as to his appeal rights, informing him that he would need to file a written motion to withdraw his plea within 30 days and explain why he wanted to withdraw the plea. The court explained that if the motion was granted, the guilty plea and sentence would be set aside, and the case would go to trial with the previously dismissed charges reinstated. If the motion was denied, defendant would have 30 days to file a written notice of appeal and any issues not raised in the motion would be waived for appeal. Defendant indicated that he understood his appeal rights.

---

[1] The common law record does not contain a written guilty plea, only the verbal plea as indicated in the report of proceedings.

¶ 14                                    B. Procedural Background

¶ 15                            1. Post Plea Proceedings and Direct Appeal

¶ 16    As noted in defendant's direct appeal, the record contains a number of *pro se* filings by defendant after his guilty pleas were entered.

¶ 17    Defendant filed an initial petition to withdraw his guilty plea and vacate sentence, dated January 26, 2018, that was received by the trial court on February 3, 2018. Defendant argued in his petition that he was not appointed counsel that he could understand, and he did not in any way understand or know how to read English. He asserted that the court violated his constitutional right to a fair trial, he had not been able to file a posttrial motion because he did not speak or read any English and was poor so he could not afford a lawyer. Defendant filed a second petition to withdraw guilty plea and vacate sentence dated February 1, 2018, in which defendant raised the same arguments as in the first petition.

¶ 18    Counsel was appointed to represent defendant at a hearing on his petitions on March 30, 2018. Counsel also filed an amended motion to withdraw defendant's guilty plea on defendant's behalf, contending that he did not understand the plea and felt confused. APD Ahuja also filed a Rule 604(d) certificate. Defendant was present in court and a Spanish interpreter was appointed to assist him. The court noted that it "went over backwards" to make sure that defendant understood what was going on; answered defendant's questions; additionally, went beyond the normal admonishments; explained parole and MSR and registration as a sex offender; explained a jury trial; allowed him time to confer with his attorney and offered him more time to think about the plea, which he declined. The trial court found that the plea was proper, that defendant knew what he was doing and gave a knowing, voluntary and intelligent plea. The court then denied

defendant's motion and admonished him of his appeal rights. Defendant filed his direct appeal on March 30, 2018 (No. 1-18-1209).

¶ 19    On direct appeal, defendant contended that: (1) his guilty plea was involuntary because the record corroborates his post-plea claim that he did not understand the plea proceedings and the trial court failed to substantially comply with Rule 402 (Ill. S. Ct. 402 (eff. July 1, 2012)); (2) this case should be remanded for further post-plea proceedings with new counsel because: (a) post-plea counsel was ineffective for failing to move to withdraw as counsel based on a conflict of interest and (b) this case should be remanded because the trial court erred in failing to determine, prior to ruling on defendant's motion to withdraw his plea, whether post-plea counsel had a conflict of interest; and (3) this cause should be remanded because post-plea counsel failed to strictly comply with Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)) and amend defendant's *pro se* motion to withdraw his plea to include an allegation that the trial court failed to substantially comply with Rule 402. *People v. Alvarado-Gonzalez*, 2021 IL App (1st) 181209-U, ¶ 26.

¶ 20    We affirmed, finding that defendant's guilty plea was entered knowingly and voluntarily. *Id.* ¶ 42. We also found that there was no plain error because the trial court substantially complied with Illinois Supreme Court Rule 402 admonishments (eff. July 1, 2012) (*Id.* ¶¶ 52-62); defense counsel did not operate under a conflict of interest when she presented defendant's motion to withdraw his plea and thus was not ineffective for failing to withdraw as counsel (*Id.* ¶¶ 72-74); the trial court did not err by not inquiring into any alleged conflict of interest prior to accepting the plea; and counsel was not ineffective where she failed to amend defendant's *pro se* pleading to include a meritless claim (*Id.* ¶ 76).

¶ 21                            2. Defendant's Postconviction Proceedings

¶ 22    Prior to filing his notice of direct appeal, defendant filed what was categorized as a postconviction petition on March 2, 2018, in which he again argued that he did not understand English, nor did he understand his attorney that was appointed from the public defender's office. The trial court denied defendant's postconviction petition on May 30, 2018, because his claims were refuted by the record. Specifically, the trial court noted that the petition raised the same allegations as the various motions to withdraw the guilty plea and further found that defendant's motion to withdraw his plea filed on February 3, 2018, was untimely; a Spanish interpreter was appointed for defendant who assisted him with his plea and further that defendant was properly admonished.

¶ 23    On March 13, 2019, defendant filed a motion with additional claims challenging his guilty plea and the trial court denied leave to file on May 21, 2019. Defendant's subsequent consolidated *pro se* appeals (Nos. 1-19-0653 & 1-19-1380) were remanded for defendant to withdraw or amend his pleadings on September 22, 2021. Defendant ultimately withdrew those pleadings in the trial court.

¶ 24    Meanwhile, on April 1, 2019, defendant filed a successive postconviction petition claiming that he was mentally unfit and that defense counsel was ineffective for failing to seek a fitness hearing or investigate his defenses. In this petition, defendant alleged that there were Facebook messenger conversations allegedly with the complainant's mother who was asking for money, offering sex, threatening him with deportation and falsely reporting him for a sex offense. This successive petition was summarily dismissed on November 1, 2019.

¶ 25    On December 8, 2020, defendant filed a second successive postconviction petition claiming actual innocence based on newly discovered evidence. Defendant argued that his attorney

never saw three affidavits regarding complainant's parents' blackmail, extortion, and false accusations to Chicago police in 2017, and referenced eight pages of Spanish language Facebook messages. The trial court dismissed defendant's second successive postconviction petition on April 2, 2021, noting that the documents defendant referenced were not attached to the petition and further that defendant could not claim actual innocence after a guilty plea. Defendant's subsequent appeal (No. 1-21-0882) was remanded by this Court for reconsideration under our supreme court's decision in *People v. Reed*, 2020 IL 12490 on December 23, 2022. On February 3, 2023, in response to the remand, the trial court entered an order finding that no further review of the third successive postconviction petition was required as it was considered and denied under the *Reed* standard on September 22, 2022.

¶ 26    Defendant also filed two motions in June 2021, a motion to "proceed on second and third evidentiary hearing on postconviction petition filed [December 8, 2020]" claiming actual innocence and a motion for substitution of judge, which was denied. Defendant filed an appeal (No. 1-21-0991) which was dismissed because there was no underlying action pending. Defendant subsequently sought to file a fourth successive postconviction petition on July 7, 2021, claiming actual innocence under *Reed*, 2020 IL 12490, and included the same affidavits and Facebook messages that were in Spanish. On October 20, 2021, defendant sought to file a fifth successive postconviction petition, which again raised the same allegations and included the same attachments. Defendant filed various motions attempting to advance the fourth and fifth successive postconviction petitions and requesting that the trial court translate all of his attachments to English.

¶ 27 The trial court found that the exhibits dated back to 2016 and further that defendant's sister indicated that defendant had prior problems with several kids. On September 22, 2022, the trial court dismissed both successive petitions and all related pleadings. The trial court concluded that: (1) the petitions were barred by *res judicata*; (2) the evidence defendant provided was not conclusive of an actual innocence claim and that it was defendant's burden to demonstrate how and why the messages had merit; (3) the messages defendant attached to his petitions showed that his sister harassed complainant's parents; and (4) the translation of the affidavits was defendant's burden. Defendant filed his timely notice of appeal on October 11, 2022.

¶ 28                                ANALYSIS

¶ 29 As noted above, defendant contends on appeal that we should reverse the trial court's order denying him leave to file a fourth and fifth successive postconviction petition and remand, with instructions to translate the evidence from Spanish to English and to assign the case to a new judge, because: (1) the trial court refused to consider evidence of defendant's actual innocence because it was in Spanish; and, (2) it was unfair to deny review of the submitted evidence merely because it was in untranslated Spanish.

¶ 30 The Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) contemplates the filing of only one postconviction petition. *People v. Ames*, 2019 IL App (4th) 170569, ¶ 12. Specifically, section 122-3 of the Postconviction Act declares any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived. 725 ILCS 5/122-3 (West 2020). Section 122-1(f) of the Postconviction Act sets forth an exception to the waiver rule, providing that only one petition may be filed by a petitioner without leave of court, which may be granted only if a petitioner demonstrates cause for his or her failure

to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. 725 ILCS 5/122-1(f) (West 2020). For purposes of this subsection, a petitioner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during the initial post-conviction proceedings and a petitioner shows prejudice by demonstrating that the claim not raised during the initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process. *Id.*

¶ 31    Thus, for a defendant to obtain leave to file a successive postconviction petition, both prongs of the cause-and-prejudice test must be satisfied. *Ames*, 2019 IL App (4th) 170569, ¶ 12. With a motion for leave to file a successive postconviction petition, the court is just conducting a preliminary screening to determine whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice. *Id.* ¶ 13. The court is only to ascertain whether the defendant has made a *prima facie* showing of cause and prejudice; if so, the trial court grants the defendant leave to file the successive postconviction petition. *Id*. In conducting the preliminary screening, our supreme court has held that the State should not be allowed to participate. *Id.*

¶ 32    However, if a defendant sets forth a claim of actual innocence in a successive postconviction petition, meaning that he can demonstrate a fundamental miscarriage of justice, he is "excused" from showing cause and prejudice. *People v. Green*, 2012 IL App (4th) 101034, ¶ 29. When a successive postconviction petition based on a claim of actual innocence is filed, leave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence. *People v. Calhoun*, 2016 IL App (1st) 141021, ¶ 26. In other words, leave of

court should be granted when the petitioner's supporting documentation raises the probability that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. *Id.*

¶ 33    The elements of a successful claim of actual innocence require that the evidence supporting the claim must be (1) newly discovered, (2) material, (3) not merely cumulative, and (4) of such conclusive character that it would probably change the result on retrial. *Id.* ¶ 27. In order to constitute a claim of actual innocence, the new evidence must vindicate or exonerate the petitioner: it must do more than merely call into question the sufficiency of the evidence adduced at trial. *Id.*

¶ 34    Before proceeding to the merits of defendant's appeal, we note that our review of the record shows that defendant failed to seek leave to file any of his successive postconviction petitions, but in particular the fourth and fifth successive postconviction petitions that are the subject of this appeal, as required by section 122-1(f) of the Postconviction Act. 725 ILCS 5/122-1(f) (West 2020). However, if the trial court is satisfied that a defendant has submitted sufficient documentation to allow the court to make the section 122-1(f) determination, the trial court may do so and choose to address the defendant's successive petition on the merits. *Green*, 2012 IL App (4th) 101034, ¶ 26.

¶ 35    In this case, we conclude that our review of the trial court's dismissal of defendant's fourth and fifth successive postconviction petitions is not limited given that the trial court saw fit to consider the matter and rule on its own accord (*Id.*), we turn to the merits of defendant's appeal.

¶ 36    In this case, the trial court dismissed defendant's fourth and fifth successive postconviction petitions without finding facts and thus we review its judgment *de novo*. *Green*, 2012 IL App (4th) 101034, ¶ 30. A trial court's determination that a petitioner has failed as a matter of law to assert

a colorable claim of actual innocence suggests *de novo* review. *People v. Jones*, 2017 IL App (1st) 123371, ¶45. Additionally, we may affirm the trial court's judgment on any basis supported by the record if the judgment is correct. *Green*, 2012 IL App (4th) 101034, ¶ 30. Just as our supreme court did not decide the issue in *People v. Edwards*, 2020 IL 111711, ¶ 30, we need not determine this issue in this case because defendant's claim of actual innocence fails under either standard of review, since we find that his supporting documentation is too insufficient to justify further proceedings. *Jones*, 2017 IL App (1st) 123371, ¶ 45.

¶ 37    The record establishes that defendant has a lengthy history of filing pleadings since entry of his guilty pleas on January 3, 2018. He filed two petitions to withdraw his guilty plea dated January 26 and February 1, 2018. He filed his first postconviction petition before the hearing on those petitions on March 6, 2018, and subsequent petitions and pleadings in the time since, leading up to the fourth and fifth postconviction petitions that are the subject of this appeal.

¶ 38    We first note that defendant has not shown why his actual innocence claim could not have been raised on direct appeal or in his initial postconviction petition, which was filed in 2018. Defendant alone had knowledge of whether or not he was actually innocent of the charges against him and presumably could have raised that claim at any time. Indeed, the record establishes that defendant first raised a claim of actual innocence on other grounds in his December 2020 third successive postconviction petition. Moreover, the documentation attached to the fourth and fifth successive petitions dates as far back as 2016, which was prior to entry of his guilty pleas, and again, defendant has offered no reason for why such documentation and claims could not have been presented earlier. In the context of a successive postconviction petition, the procedural bar of waiver is not merely a principle of judicial administration; it is an express requirement. *People v.*

*Montanez*, 2023 IL 128740 (2023). As such, we find that defendant's claims are waived pursuant to section 122-3 of the Post-Conviction Act. 725 ILCS 5/122-3 (West 2020).

¶ 39    Waiver aside, our review of defendant's fourth and fifth successive postconviction petitions and supporting documentation yields the conclusion that defendant did not establish a colorable claim of actual innocence. Defendant's argument appears to be that he is actually innocent because his supporting documentation shows that complainant's mother asked for money, offered sex, threatened defendant with deportation, and threatened to falsely report him for a sex offense. Defendant also submitted three affidavits in Spanish that were dated in 2017; however, the content of those affidavits is unknown because they are untranslated. While defendant argues on appeal that the trial court should have translated those affidavits, such an argument contradicts defendant's burden on a successive postconviction petition. It is defendant's burden as the petitioner to establish that his evidence conclusively supports his claim of actual innocence. *Calhoun*, 2016 IL App (1st) 141021, ¶ 27. It is not the responsibility of the trial court or this court to speculate on the contents of defendant's supporting documentation.

¶ 40    Recognizing that the translation of documents may trigger some access to justice concerns, lets assume that defendant's allegations that the untranslated affidavits and Facebook messages show that complainant's mother had questionable character are true. The proposed evidence  still fails to show that defendant's convictions, which were the product of negotiated guilty pleas, would have been different. It does not conclusively establish in any way that defendant was actually innocent of the charges of predatory criminal sexual assault of a victim less than 13 years of age and grooming.

¶ 41    As noted above, in order to establish actual innocence, the evidence submitted to support the claim must be (1) newly discovered, (2) material, (3) not merely cumulative, and (4) of such conclusive character that it would probably change the result on retrial. *Id.* We have already adduced that the evidence was not newly discovered as it is dated prior to the filing of defendant's initial postconviction petition. Nor was it material to defendant's claim of actual innocence or conclusive as discussed above. This is true regardless of whether the evidence was translated from Spanish; it was insufficient to establish defendant's actual innocence. Accordingly, we find that the trial court properly dismissed defendant's fourth and fifth successive postconviction petitions for failure to state a colorable claim of actual innocence.

¶ 42                                  CONCLUSION

¶ 43    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 44    Affirmed.